ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
ANDREW C. STONE
Arizona State Bar No. 026543
andrew.stone@usdoj.gov
M. BRIDGET MINDER
Arizona State Bar No. 023356
mary.minder@usdoj.gov
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>  vs.<br><br>Elias Bermudez,<br><br>  Defendant. | CR-17-01301-PHX-DJH<br><br>**RESPONSE TO DEFENDANT'S MOTION TO CHANGE VENUE** |

Defendant's motion to change venue should be denied. Defendant's claim that the media attention surrounding this case is so incendiary that the trial must be moved outside of Arizona is unavailing. Defendant does not, nor can he at an evidentiary hearing, demonstrate that Phoenix—the community where the trial will be held—has been saturated with prejudicial and inflammatory media publicity about the crime.[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Pertinent Facts**

On October 3, 2017, an indictment was returned against Defendant charging him with 27 counts of aiding or assisting the preparation of false tax returns. (Doc. 1.) Within

---

[1] Based on the facts presented by Defendant in his motion, coupled with the applicable law governing motions to change venue, the government does not believe an evidentiary hearing is necessary and believes the Court can rule based solely on the parties' motions.

the next week, four news articles reported on the indictment.  The articles were published by, Phoenix New Times, Sonoran News, Arizona Republic, and ADI News Services, respectively.  Each article highlighted the facts as alleged in the indictment, specifically discussing the number of counts, the criminal charges, and the supporting factual allegations.  (Doc. 29-1.)  Three of the articles also outlined Defendant's history with immigration-related issues and his past brushes with law enforcement.  (*Id.*)

The Arizona Republic article, for example, provided a summary of the indictment and then attributed several statements to Defendant, including that "he was unaware of the indictment but wasn't worried," "he has cooperated and provided documents," and "would get his day in court." (Doc. 29-1 at 9.) The article also quoted Defendant stating, "'They will find I did not do anything to hurt my people.'" And, "'I'm a person who likes to get into controversy,' Bermudez said, adding that there are thousands of tax preparers in Phoenix. 'Why are they after me?'" (*Id.*) The article also provided additional facts about Defendant, including that he previously founded immigration advocacy groups and helped organize marches and boycotts, that a Maricopa County judge sanctioned him in 2009 for providing legal advice without a law license, and that he was sentenced to 18 months in federal prison for laundering drug-trafficking profits for his brother-in-law. (*Id.*) Finally, the article ended by stating Defendant maintains his innocence and providing the date and time for his arraignment. (*Id.*)

In addition to the four news articles that discussed Defendant's indictment, he attached six other articles published between 2006-2012. These articles generally touched on Defendant's involvement as an immigration advocate, his interactions with then Sheriff Joe Arpaio, and his legal trouble. (*See* Doc. 29-2 & 29-3.) Obviously, none of these articles discussed the allegations from the indictment.

II.     **Defendant Fails to Demonstrate Presumed Prejudice**

A defendant must demonstrate one of two different types of prejudice to support a motion to change venue: presumed or actual. *United States v. Sherwood*, 98 F.3d 402, 410

(9th Cir. 1996). Here, Defendant relies solely on arguing that he has suffered presumed prejudice, because the motion comes before the start of jury selection and trial. *See United States v. W.R. Grace*, 408 F. Supp. 2d. 998, 1007 (D. Mont. 2006) ("Because this motion comes before the start of jury selection and trial, the Defendants must demonstrate presumed prejudice. In the absence of proved presumed prejudice, the case must be tried in Missoula unless actual prejudice exists when a Missoula jury is impaneled.").

### A. Presumed Prejudice is Rare

"Prejudice is presumed when the record demonstrates that the community where the trial was held was *saturated* with *prejudicial and inflammatory* media publicity about the crime." *Sherwood*, 98 F.3d at 410 (citing *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988) (emphasis in original). "Saturation," however, only exists in "extreme situations," so prejudice is rarely presumed. *Id.* Among the factors a court will consider when a presumed prejudice argument is raised is whether there was a "barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion." *Ainsworth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998) (citations omitted). An additional factor is whether media accounts were primarily factual, because those accounts tend to be less prejudicial than "inflammatory editorials or cartoons." *Id.* Finally, a court will analyze whether the articles contained, inflammatory, prejudicial information that was not admissible at trial. *Id.*

Courts have failed to find presumed prejudice in cases with much more robust media coverage. These include the following:

- No presumed prejudice in a case against a mine operator for allegations involving asbestos released into a small community where defendants submitted: 1,900 newspaper articles; compilation of recent television news coverage; two documentary films focusing on the asbestos situation; and two books examining the company's role in the matter. *W.R. Grace*, 408 F. Supp. 2d. at 1007.

1. -   No presumed prejudice in a case involving the kidnapping of Vegas-casino owner Steve Wynn's daughter even when the intense media coverage caused 96% of the potential jurors to admit they knew about the case. *Sherwood*, 98 F.3d at 410.
2. -   No presumed prejudice in a case involving a brutal murder and rape, because defendant failed to identify any editorials or opinion pieces speculating about his guilt and any potential prejudicial articles were printed several months before trial. *Ainsworth*, 138 F.3d at 795.

### B. The News Coverage About Defendant Does Not Rise to the Level of Presumed Prejudice

Defendant argues that the four newspaper articles combined with a handful of other articles from six to twelve years ago, rises to the level where the Court can presume prejudice. Defendant is mistaken. First, four articles from nearly a year ago that describe the indictment do not equate to a "barrage of inflammatory publicity immediately prior to trial amounting to a huge wave of public passion." *Sherwood*, 98 F.3d at 410. These articles were primarily factual in nature and did not include editorials or even any opinions about Defendant's guilt. *See id.* The best argument in Defendant's favor is that several articles included details about Defendant's previous federal conviction and stint in prison. But the Ninth Circuit has held that discussion about a defendant's criminal history is not "presumptively prejudicial." *See Ainsworth*, 128 F.3d at 795. That's especially true when the newspaper article was printed "several months before trial." *Id.* Here, Defendant has only provided media accounts from October 2017, so even if the articles contained information approaching "inflammatory," the timing of their publication eliminates any potential prejudice.

### III. Defendant Likely Cannot Demonstrate Actual Prejudice

In order for Defendant to establish actual prejudice, he must demonstrate the jurors exhibited "actual partiality or hostility that could not be laid aside." *Sherwood*, 98 F.3d at

410 (citing *Harris*, 885 F.2d at 1363). District courts measure potential jurors' hostility to a defendant through voir dire and jury questionnaires. *United States v. Collins*, 109 F.3d 1413, 1417 (9th Cir. 1997). These devices will both be employed in the instant matter. In measuring the reliability of a juror's assurances of impartiality, the number of potential jurors who hold "fixed opinions as to the guilt of petitioner" is measured against the number of jurors on the panel. *Id.* The Supreme Court held that an inference of actual prejudice did not exist even when "20 of the 78 persons questioned were excused because they indicated an opinion as to petitioner's guilt." *Murphy v. Florida*, 421 U.S. 794, 803 (1975). The *Murphy* Court upheld the district court's denial of a motion to change venue, reasoning that this "by no means suggests a community with sentiment so poisoned against petitioner as to impeach the indifference of jurors who displayed no animus of their own." *Id.* Finally, even when 96% of the potential jurors admit they are aware of the crime, that fact alone "does not demonstrate actual prejudice." *Sherwood*, 98 F.3d at 410. "Although a defendant is entitled to an impartial jury, he is not entitled to a jury completely ignorant of the facts." *Id.* (citations omitted).

To the extent Defendant is moving to change venue based on actual prejudice, the Court must wait until after voir dire is completed before making that determination, but it seems unlikely Defendant will satisfy that high standard.

**IV. Conclusion**

Defendant's motion to change venue based on presumed prejudice should be denied.

Respectfully submitted this 9th day of August, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/Andrew C. Stone*
ANDREW C. STONE
M. BRIDGET MINDER
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Kristina Sitton Matthews

*s/Gaynell Smith*
U.S. Attorney's Office