ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
ANDREW C. STONE
Arizona State Bar No. 026543
andrew.stone@usdoj.gov
M. BRIDGET MINDER
Arizona State Bar No. 023356
mary.minder@usdoj.gov
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-17-01301-PHX-DJH |
|---|---|
| Plaintiff, | |
| vs. | **GOVERNMENT'S NOTICE TO ADMIT OTHER ACTS EVIDENCE** |
| Elias Bermudez, | |
| Defendant. | |

As requested by the Court at the Final Pretrial Conference, the government submits this brief in support of its Notice of Intent to Introduce Other Acts Evidence (doc. 28).

Summary data regarding other tax returns defendant prepared is admissible because the returns are inextricably intertwined with the charges in the Indictment for two independent reasons. First, other returns defendant filed during the relevant tax years are part of the same criminal transaction: defendant's improper use of certain tax credits. Second, summary data is necessary to explain (a) why the IRS began investigating defendant, (b) how much defendant made from his scheme, and (c) why the IRS pays refunds, including the fraudulent refunds sought here, before it investigates their veracity.

The data is also admissible under Rule 404(b). The data is probative of defendant's state of mind, a key issue in this tax case given the government must prove he willfully violated the tax laws, and satisfies the other requirements for admission under 404(b).

**Background**

Defendant has been a tax preparer for more than 20 years. He is charged in this case with aiding or advising the preparation of 27 false tax returns for tax years 2010, 2011, and 2012. *See* Indictment (doc. 1). The indictment alleges defendant added false dependents to his clients' tax returns to minimize or eliminate altogether their taxable income and improperly increase their refund using refundable tax credits for which they did not qualify.

Defendant's tax preparation business was flagged by the IRS Scheme Development Center (SDC) in early 2011. Defendant was flagged because he was an outlier among tax preparers, both in terms of his refund percentage and his use of refundable tax credits. For example, in tax year 2010, 97% of tax returns prepared by defendant's business, The Help Center, claimed a refund (compared with the national average of 84%).

Based on these statistical findings, SDC referred defendant to IRS Criminal Investigations (IRS-CI) for investigation, which ultimately led to the charges in the Indictment.[1] The government plans to introduce testimony regarding the statistical findings leading to the 2011 SDC referral through Kristy Morgan (*see* doc. 27). The government marked the 2011 SDC referral as Exhibit 55, but does not plan to admit it at trial (*e.g.*, it may be used to refresh Ms. Morgan's recollection if needed). The IRS-CI case agent may offer testimony regarding the impetus for his investigation as well.[2]

Further investigation by IRS-CI, including undercover meetings with defendant by IRS-CI agents pretending to be potential clients, showed defendant was routinely encouraging clients to add false dependents to their returns and improperly claiming the Additional Child Tax Credit (ACTC) to fraudulently maximize their refund amount.[3] The

---

[1] This is not uncommon. *See United States v. Williams*, 683 F. App'x 376, 378 (6th Cir. 2017) (IRS began to investigate defendant after it noticed that 99% of defendant's clients received refunds, compared to 71% of taxpayers in the same zip code).

[2] Testimony regarding the impetus for the investigation is not hearsay because it is not offered for its truth, but for its effect on IRS-CI in starting the investigation. *See, e.g.*, *United States v. Dominguez*, 180 F.App'x 651, 652 (9th Cir. 2006).

[3] At the Final Pretrial Conference, the Court held excerpts of the undercover videos are admissible, subject to the Court's review to confirm they are not unfairly prejudicial.

government plans to introduce through Ms. Morgan testimony and the summary charts marked as Exhibit 56 (Attachment A hereto) regarding defendant's refund rate and use of ACTC for the tax years at issue, as well as the general refund rate and use of ACTC to provide context.

**Argument**

**I. Summary data regarding defendant's refund rate and use of tax credits is inextricably intertwined with the charges in the Indictment.**

Evidence of "other acts" is not subjected to Rule 404(b) analysis if it is "inextricably intertwined" with the charged offense. *United States v. Beckman*, 298 F.3d 788, 793 (9th Cir. 2002). The exception applies when (1) particular acts of the defendant are part of a single criminal transaction, or when (2) "other act" evidence is necessary to admit in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. *Id.* at 794 (internal quotations omitted). Summary data regarding defendant's refund rate and use of refundable tax credits falls into both categories identified in *Beckman*.

**A. The data is part of the same criminal transaction as the charged counts.**

First, the data summarizes other tax returns that are part of the same criminal transaction as the 27 charged returns. The Ninth Circuit has taken a broad view of the term "transaction." For example, in *United States v. Soliman*, the Ninth Circuit held that 102 other fraudulent insurance claims submitted by the defendant (as summarized in a chart) were part of the same scheme as the small number of charged counts and, thus, were inextricably intertwined with the charged counts. 813 F.2d 277, 279 (9th Cir. 1987). The *Soliman* court found the policies underlying the Rule 404(b) are "inapplicable when some offenses committed in a single criminal episode become 'other acts' because the defendant is indicted for less than all of his actions." *Id.*; *see also United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) (testimony about uncharged conduct was admissible because it "provided necessary context for … charged conduct"); *United States v. Wexler*, 621 F.2d 1218, 1225-26 (2nd Cir. 1980) (evidence of uncharged similar acts was "admissible as

demonstrating a connected or inseparable transaction from the crimes charged in the indictment.").

The same is true here. Defendant could have been charged with numerous additional counts of aiding or advising the preparation of false tax returns. The other returns defendant falsified do not become "other acts" simply because the government selected only 27 to charge.

That the government seeks to admit summary data, versus the additional tax returns themselves, does not change the analysis. The government could have sought to admit other fraudulent tax returns prepared by defendant, in addition to the 27 in the charged counts, in which defendant made the same falsities. *See United States v. Solomon*, 825 F.2d 1292, 1299 (9th Cir. 1987) (permitting the admission of 100 tax returns as relevant evidence to support the criminal charges, even though the tax returns weren't specifically associated with charged counts). In the interest of efficiency, and to avoid having to show the jury an endless number of tax returns, the government seeks to introduce only the summary data regarding returns prepared by defendant during the relevant years (2010-2012). In addition, the risk of prejudice is far less with summary data than with the tax returns underlying the data. The jury is less likely to be improperly influenced by brief testimony and a couple of summary charts regarding data, as opposed to seeing hundreds of false tax returns prepared by defendant.

**B.     The data is necessary to offer a coherent and comprehensible story.**

Second, summary data regarding the returns prepared by defendant, as well as data comparing returns prepared by defendant to others, is necessary to offer a coherent and comprehensible story regarding defendant's crimes for at least three reasons:

(a)     *SDC's 2011 findings are necessary to explain why IRS-CI began investigating defendant in the first place*. As noted above, this investigation was prompted by SDC's analysis, which showed defendant was an outlier among preparers with regard to his refund percentage and use of refundable tax credits. The government must be allowed to explain why defendant was flagged for investigation to offer a coherent and

comprehensible story. Indeed, the Ninth Circuit has held the jury must have an understanding for how law enforcement became aware of defendant's scheme, otherwise the story would be incomplete. *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992). The jury "cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *Id.*; *see also United States v. Pac. Gas & Elec. Co.*, 178 F. Supp. 3d 927, 942 (N.D. Cal. 2016) (evidence relating to the scope of a criminal investigation is directly relevant, because it would be difficult for the jury to determine guilt without understanding the nature of the investigation).

Evidence regarding what prompted the investigation is even more crucial here as defendant may claim he was targeted by the IRS because of his immigration activism.[4] *See Beckman*, 298 F.3d at 794 (holding testimony regarding defendant's prior drug run was necessary to refute defendant's claim that he had no knowledge that drugs were in the trailer he was pulling).

(b) *Evidence regarding the number of returns defendant prepared during the charged years (2010-2012) is necessary to explain what defendant earned from his scheme.* Defendant charged a relatively small preparation fee for returns (around $80) and for securing Individual Taxpayer Identification Numbers (ITINs) for his clients and their dependents (around $10-15 per ITIN). Information regarding the volume of returns prepared by defendant (thousands each year) shows that, despite his low fees, defendant earned a significant amount of money from his tax preparation service. The Ninth Circuit has held that evidence concerning defendant's earnings from a scheme is inextricably intertwined with, and necessary background to, the charges in the indictment. *See, e.g.*,

---

[4] In a recorded interview with IRS-CI agents, defendant claimed he was previously targeted by state law enforcement officials for other services his business provided because of his immigration activism and suggested he is targeted by others for the same reason. 9/24/2012 Interview of E. Bermudez at p. 35, lines 15-18 ("Well, they went after me because of my public persona, not – not because of what I was doing. So – and – and it happens in – in everything that we do – that I do."); *see also* Defendant's Motion to Change Venue (doc. 29) (discussing defendant's history of immigration advocacy).

*United States v. Andreen*, 628 F.2d 1236, 1245 (9th Cir. 1980) (evidence showing defendants earned a profit is relevant to prove intent).

Evidence regarding the number of returns prepared by defendant each year is even more important here as defendant may attempt to claim he did not profit from the scheme. In a recorded interview with IRS-CI agents, defendant claimed he didn't profit from the scheme, while others doing the same type of fraud charged much more. 9/24/2012 Interview of E. Bermudez at pg. 24, lines 13-18 ("I did not do this for the purpose of benefitting myself …. I'm not rich. I have enough only to live on."); *id*. at pg. 17, lines 20-22 ("H&R Block does exactly the same thing that I do, but they charge $300 to $400 ….").

(c) *Evidence regarding the total number of returns filed with the IRS in the charged years and the percentage of returns seeking refunds is necessary to explain why the IRS pays refunds before analyzing the veracity of the returns*. In a recorded interview with IRS-CI agents, defendant admitted he knew what he was doing was wrong but attempted to deflect blame by saying the IRS should have caught him sooner. 9/24/2012 Interview of E. Bermudez at pg. 21, lines 20-23 ("So I'm at fault in that sense. But, the same token, the person who received that document at the IRS is also at fault, because they should have detected it.").

To refute defendant's suggestion that blame somehow lies with the IRS, the government intends to introduce evidence regarding the number of returns filed each year and the percentage seeking refunds, and offer testimony explaining why the IRS must pay refunds before it fully investigates the veracity of the returns.

**II. Summary data regarding defendant's refund rate and use of tax credits is also admissible under Rule 404(b).**

Even assuming the data summarizing defendants' returns is not inextricably intertwined with the charged conduct, the data is admissible under Rule 404(b). The data is probative of key issues in this case, and its probative value is not outweighed by the danger of unfair prejudice.

Rule 404(b) provides that while evidence concerning "other crimes, wrongs, or acts" by a defendant is "not admissible to prove the character of a person in order to show action in conformity therewith," it "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The Ninth Circuit directs that Rule 404(b) "is a rule of inclusion." *United States v. Jackson*, 84 F.3d 1154, 1159 (9th Cir. 1996) (citation and quotations omitted). Evidence of defendant's other acts is admissible if it is relevant to an issue other than the defendant's character or criminal propensity. In other words, "[u]nless the evidence of other crimes tends only to prove propensity, it is admissible." *Id.*

The Ninth Circuit has held that other acts are relevant to something other than a defendant's criminal propensity when: (1) the evidence tends to prove a material point; (2) the other acts are not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; (4) the other acts are similar to the offense charged; and (5) the evidence is not subject to exclusion under Rule 403. *United States v. Chea*, 231 F.3d 531, 534 (9th Cir. 2000).

The data summarizing defendant's other returns satisfy all five elements articulated in *Chea*.

**A. The data is probative of defendant's state of mind.**

First, the summary data is highly probative of defendant's motive, intent, preparation, plan, knowledge, and absence of mistake or accident. The United States Supreme Court has held that other acts evidence "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. United States*, 485 U.S. 681, 685 (1988).

In a tax case such as this, defendant's state of mind—specifically whether he acted willfully—is the key issue in the case. To prove the defendant guilty of aiding or advising the preparation of false tax returns, the government needs to prove not only that the

returns were false as to a material point, but also that defendant acted willfully. *See* 26 U.S.C. § 7206(2); 9th Cir. Model Jury Instruction § 9.40. To prove defendant acted willfully, the government must show defendant was aware of the federal tax laws and voluntarily violated them. *See* 9th Cir. Model Jury Instruction § 9.42.

The summary data is highly probative of defendant's motive, intent, preparation and plan—namely, to improperly use tax credits to increase the amount of his clients' refunds. The summary data is also probative of his knowledge he is violating the tax laws and absence of mistake or accident—in other words, his willfulness. For example, if the 27 returns are considered in isolation, it is could appear to the jury that defendant simply made an innocent mistake on these returns or received false information from a handful of clients that he did not have reason to question. It could also appear that defendant may have been unfamiliar with the requirements for the ACTC, given that the 27 charged returns which claimed the ACTC represent less than 1% of the returns prepared by defendant during those tax years.

Considering the 27 charged returns in the context of defendant's other returns, however, presents a more complete picture of defendant's mental state for the jury. For example, the fact that the majority of returns prepared by defendant during the charged years claimed the ACTC makes it is less plausible that defendant made a mistake or received false information from clients leading him to improperly claim the ACTC.[5] It also makes it less plausible that defendant was not aware of the requirements for claiming the ACTC, given that he is an experienced tax preparer and the ACTC was used in the bulk of the returns he prepared.

The comparison of defendant's refund rate and use of ACTC to national and local data is necessary to put his other acts into context. For example, it may mean little to the jury to hear that 70% of the returns defendant prepared in 2010 claimed the ACTC. Hearing that only 14% of returns filed nationwide in 2010 claimed the ACTC, and 20%

---

[5] As reflected in Exhibit 56 (Attachment A hereto), 70% of the returns prepared by defendant in tax year 2010 claimed the ACTC, 68% in 2011, and 57% in 2012.

- 8 -

of returns filed in relevant Arizona areas (border areas and areas of Arizona where defendant was operating), puts defendants numbers into context.[6]

### B. The data is contemporaneous with the investigation and charges.

Second, the other acts are not too remote in time. There does not appear to be any dispute on this element. The charged counts concern tax years 2010-2012. The SDC referral which prompted the investigation that ultimately led to those charges concerns tax years 2008-2010. And the summary data (Ex. 56, Attachment A) concerns only the charged years, 2010-2012. All of the data is well within the limits allowed by the Ninth Circuit. *See, e.g., United States v. Iverson*, 162 F.3d 1015, 1027 (9th Cir. 1998) ("[T]his court repeatedly has upheld the admission of evidence of prior acts that are more than seven years old.") (citations omitted).

### C. The data summarizes defendant's other returns.

Third, the evidence is sufficient to support a finding that defendant committed the other acts. Again, there does not appear to be any dispute on this element and, in any event, this test has a "low threshold." *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002). Here, the data summarizes tax returns associated with defendant and his tax preparation businesses, The Help Center (Centro de Ayuda) and Centro de Progresso. The searches that produced the data were conducted using unique identifiers associated with defendant and his businesses, specifically Preparer Tax Identification Numbers (PTINs) and Employer Identification Numbers (EINs).

### D. The data summarizes other returns that are similar to the charges.

Fourth, the other acts are similar to the offense charged. The charged counts

---

[6] Defendant suggested at the Final Pretrial Conference that the national and local data is not a useful comparison because his clientele is more likely to claim the ACTC than others in Arizona and the United States. Defendant's suggestion is incorrect. The ACTC is only available to taxpayers who have a qualifying child; among other requirements, a qualifying child must be a citizen, national, or resident of the United States. Defendant's clientele (many of whom are migrant workers whose families reside in Mexico) is therefore *less* likely to have qualifying children than the population at large. In any case, as the government suggested at the Final Pretrial Conference, if defendant thinks a different subset of Arizona returns would serve as a better comparison for his data, the government is happy to investigate whether the data can be re-run.

concern defendant's use of the ACTC to improperly increase the amount of his clients' tax refunds. Similarly, the summary data reflects the other returns in which defendant claimed the ACTC and sought a refund for his clients.

### E. The data is not unfairly prejudicial.

Fifth, the evidence is not subject to exclusion under Rule 403 as its probative value is not substantially outweighed by the danger of unfair prejudice. Rule 403 does not prohibit all evidence that may prejudice defendant—only evidence that *unfairly* prejudices defendant, and only then, when the probative value of such evidence is *substantially* outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. There is little danger of unfair prejudice in this case. Summary data regarding returns filed by defendant is not the kind of evidence that would provoke a strong and emotional response from the jury and, thus, is not unfairly prejudicial. *See United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1326-27 (9th Cir. 1992) (holding evidence that does not provoke an emotional response or otherwise adversely affect jury's attitude toward defendant apart from its judgment as to guilt is not unfairly prejudicial). Any prejudice can also be minimized by a limiting instruction to the jury. *See, e.g.*, *Romero*, 282 F.3d at 688 n.1 (finding jury instruction adequately protected defendant against any undue prejudice from admission of evidence under Rule 404(b)).

### Conclusion

For the foregoing reasons, the government requests the Court allow admission of the following testimony and records as inextricably intertwined with the charged counts or, alternatively, as other acts evidence under Rule 404(b):

(1) Testimony regarding the impetus for IRS-CI's investigation of defendant, including SDC's findings suggesting defendant was an outlier in terms of his refund rate and use of refundable tax credits;

(2) Testimony regarding the total number of returns filed with the IRS during the charged years (2010-2012) and the percentage of those returns seeking refunds, to explain why the IRS must pay refunds before it fully investigates their veracity;

(3) Testimony regarding the number of returns prepared by defendant during the charged years, to explain how much defendant earned from the scheme;

(4) Testimony regarding the percentage of returns prepared by defendant during the charged years which sought a refund and used the ACTC, as such returns are part of the same criminal transaction as the charged counts and, in any case, the data summarizing defendant's other returns probative of defendant's motive, intent, preparation, plan, knowledge, and absence of mistake or accident; and

(5) Testimony and summary charts (specifically, Ex. 56, Attachment A hereto) comparing defendants refund rate and use of ACTC to the national and local refund rates and use of ACTC, to provide necessary context for the evidence regarding defendant.

Respectfully submitted this 27th day of August, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/Andrew C. Stone*
ANDREW C. STONE
M. BRIDGET MINDER
Assistant U.S. Attorneys

### CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Kristina Sitton Matthews

*s/Cristina Abramo*
U.S. Attorney's Office