ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
ANDREW C. STONE
Arizona State Bar No. 026543
andrew.stone@usdoj.gov
M. BRIDGET MINDER
Arizona State Bar No. 023356
mary.minder@usdoj.gov
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-17-01301-PHX-DJH |
| Plaintiff, | |
| vs. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE AND SENTENCING MEMORANDUM** |
| Elias Bermudez, | |
| Defendant. | |

Defendant is a three-time felon who has engaged in filing false tax returns for 30 years. Based on these facts, the government believes an 18-month sentence is appropriate. In contrast, Defendant seeks a downward departure and probationary sentence based on two factors: (1) he's old, and (2) he's had no contact with law enforcement since 1994. (Doc. 53.) But these arguments do not justify a downward departure or variance. Defendant should serve a custodial sentence for his actions and the United States recommends the low-end of the sentencing guidelines.

**I.     The PSR's Guidelines Calculation**

Counsel for the United States has reviewed the Presentence Investigation Report (Doc. 52) ("PSR") and has no objections, additions, or corrections. The PSR calculates a total offense level of 15, which accounts for a two-level increase because Defendant was in the tax preparation business, along with an appropriate reduction for acceptance of

responsibility. (PSR ¶¶ 17-27.) Defendant's criminal history category is classified as a I, because his two previous felonies, which occurred in 1987 and 1994, are too old to affect the computation. (*Id.* at ¶¶ 29-31.) With a total offense level 15 and a criminal history category I, Defendant's applicable guidelines range is 18-24 months in custody. (*Id.* at 16.)

## II. The § 3553(a) Factors Support a Sentence of 18 Months

A sentence of 18 months is appropriate when the Court considers the nature and circumstances of the offense, along with Defendant's history and characteristics. A custodial sentence affords adequate deterrence and promotes respect for the law.

### A. Nature and Circumstances of the Offense

The Sentencing Guidelines recognize that tax offenses are serious offenses. U.S.S.G. § 2T1.1, background ("Tax offenses, in and of themselves, are serious offenses."). "The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws." U.S.S.G., Ch. 2, Part T, introductory commentary. The Sentencing Guidelines were specifically designed to increase the likelihood of imprisonment for tax offenders. U.S.S.G. § 2T1.1, background ("This guideline is intended to reduce disparity in sentencing for tax offenses and to somewhat increase average sentence length. As a result, the number of purely probationary sentences will be reduced.").

Here, Defendant pleaded guilty to willfully preparing false income tax returns through his company The Help Center (a/k/a El Centro de Ayuda). (*Id.* at ¶ 4.) Defendant's company prepared approximately 3,000 to 4,000 returns each year from 2007 through 2010. (*Id.*) Approximately 95% of those returns claimed refunds. (*Id.*) A large percentage of those refunds claimed the Additional Child Tax Credit. (*Id.*)

The Additional Child Tax Credit permitted taxpayers to reduce their federal income tax by up to $1,000 for each qualifying child. (PSR ¶ 5.) To qualify for the credit, the

child or dependent must, among other things: (a) be a United States citizen, national, or resident alien; (b) have lived with the taxpayer for more than half of the tax year; and (c) have received at least half of his or her financial support from the taxpayer. (Doc. 1 at 2; PSR ¶ 5.) Defendant prepared false tax returns by fraudulently claiming the Additional Child Tax Credit on his clients' tax returns when the credit didn't apply. (PSR ¶ 6.) Defendant often suggested his clients add "dependents" to their tax returns, even when the taxpayers did not live with or financially support the claimed "dependents." (*Id.* at ¶¶ 7-13.)

In September 2012, Defendant admitted to engaging in this fraud when he spoke with federal law enforcement agents. (PSR ¶ 12.) Defendant told law enforcement agents he directed his employees, including his daughter and wife, to use the Additional Child Tax Credit even though the dependent children at issue weren't living with the taxpayers. (*Id.*) Defendant charged his clients approximately $85 per tax return filed. (*Id.* at ¶ 13.) So even though he wasn't taking a percentage of his clients' tax returns, at 3,000 filings a year, his company earned over $250,000 annually. (*Id.*) The government interviewed a subset of Defendant's clients and confirmed that 27 separate tax returns were fraudulently filed, which resulted in a total loss to the United States of $131,651. (*Id.*)

**B.    Defendant's History and Characteristics**

Defendant has two previous felony convictions. (PSR ¶¶ 30-31.) In 1987, Defendant was convicted of soliciting or accepting a bribe in Yuma County Superior Court. (*Id.* at ¶ 30.) At the time, Defendant served on the City Council for San Luis, Arizona, and offered to use his position to assist the San Luis Police Chief in exchange for suppression of information. (*Id.*) Seven years later, Defendant was convicted in federal court for money laundering, which involved Defendant concealing drug proceeds. (*Id.* at ¶ 31.)

The more disturbing fact about Defendant's second felony conviction is related to the alleged criminal conduct that the government dismissed in accordance with the plea agreement. (PSR ¶¶ 34-36.) According to the PSR, Defendant, through his company

Centro De Progreso, prepared and filed 7,000 income tax returns between 1989-1993. (*Id.* at ¶ 36.) Of those 7,000 returns, 85% fraudulently claimed the Earned Income Credit. (*Id.*) During this time, undercover law enforcement agents went to Defendant's company for tax preparation services, and Defendant's employees prepared tax returns that falsely claimed the Earned Income Credit. (*Id.* at ¶ 35.)

The fact that Defendant has previously been investigated, and prosecuted, for preparing false tax returns is important. It shows Defendant's conduct here was not due to a mistake, accident, or lack of knowledge. He knows what can happen when a large percentage of tax returns he prepares claim fraudulent credits. The Internal Revenue Service can investigate and, if that happens, there's a good chance criminal charges will follow. Even armed with his knowledge, Defendant still chose to file dozens—and perhaps thousands—of tax returns that falsely claimed the Additional Child Tax Credit. This conduct deserves more than a probationary sentence.

Defendant relies on his age and lack of criminal convictions since 1994 as the two reasons why the Court should impose a probationary sentence. (Doc. 53 at 3-4.) First, while it's true Defendant is 68 years old, the PSR states he's in good physical health. (PSR ¶ 50.) He does have high cholesterol and blood pressure, but those problems are controlled with medication. Also, in October 2018, he had his right knee replaced, but, again, that issue is managed through pain medication. Defendant will be able to continue taking his required medications while in custody. In short, neither Defendant's age nor his physical condition distinguishes him "to an unusual degree" from "the typical cases covered by the guidelines." U.S.S.G. §§ 5H1.1 & 5H1.4; *see, e.g., United States v. Tucker*, 986 F.2d 278, 280 (8th Cir. 1993) (age and health of 67-year-old defendant were within parameters of ordinary case and therefore did not warrant downward departure from guideline sentence); *United States v. Brown*, 338 F. Supp. 2d 552, 561 (M.D. Pa. 2004) (76-year-old defendant who suffered from peripheral arterial disease, coronary artery disease, hypertension, and hyperlidemia was not entitled to downward departure).

Second, while it's true Defendant hasn't received any felony convictions in 25 years, he has not avoided negative court orders. Specifically, in 2008, the Arizona Bar Association filed a lawsuit against Defendant and his company that filed the tax returns at issue in this case—El Centro de Ayuda—for the unauthorized practice of law. (PSR ¶ 53; Doc. 29-1 at 7.) According to certain newspaper articles that Defendant previously attached as exhibits in this case, in 2009, the Maricopa County Superior Court granted the Bar Association's motion for summary judgment and permanently enjoined Bermudez from engaging in the practice of law. (Doc. 29-1 at 7.) So, while Defendant may be accurate about his time between felony convictions, the government doesn't believe this point is persuasive.

### C. Affording Adequate Deterrence And Promoting Respect for the Law

A custodial sentence is also important to afford adequate deterrence. In this case, the government believes Defendant may reoffend, especially if he's given a probationary sentence. Defendant has engaged in similar conduct before and does not seem deterred by a previous stint in prison. In addition, general deterrence is an important consideration for tax crimes. *E.g.*, *United States v. Orlando*, 553 F.3d 1235, 1239 (9th Cir. 2009) (affirming 40-month sentence in tax evasion case, which promoted respect for the law and "capture[d] tax crimes' particular sensitivity to deterrence"); *see also United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010) (Sentencing Guidelines emphasize deterrence in the tax context); *United States v. Carlson*, 498 F.3d 761, 765 (8th Cir. 2007) ("Terms of imprisonment are important 'to deter others from stealing from the national purse.'").

Equally important under the applicable sentencing factors is promoting respect for the law. Over the course of Defendant's adult life, his respect for the law has often been lacking. An 18-month custodial sentence is necessary to afford adequate deterrence and promote respect for the law. *See United States v. Ture*, 450 F.3d 352, 358 (8th Cir. 2006) (noting the Sentencing Guidelines strongly advocate for a custodial sentence for willful tax evaders and discussing the need to promote respect for federal tax laws).

## III. Conclusion

For all these reasons, the government requests a sentence of 18 months' imprisonment followed by one year of supervised release. The government also requests restitution to the IRS in the amount of $131,651.

Respectfully submitted this 14th day of February, 2019.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*s/Andrew C. Stone*
ANDREW C. STONE
M. BRIDGET MINDER
Assistant U.S. Attorneys

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Kristina Sitton Matthews

*s/Gaynell Smith*
U.S. Attorney's Office